KWAN ALLEN AND JELINDA GIBSON ALLEN
v.
THE LAW FIRM OF WRIGHT MOORE & ASSOCIATES, ATTORNEY ERIC WRIGHT, PERSONALLY AND IN HIS CAPACITY AS STAFF ATTORNEY
No. 2008-CA-0434
Court of Appeals of Louisiana, Fourth Circuit.
December 10, 2008
Not Designated for Publication
GLYN J. GODWIN, Counsel for Plaintiffs/Appellants.
DAVID S. DALY, ELLIOT M. LONKER, Allen & Gooch, Counsel for Eric Wright, Wright, McMillan & Moore Continental Casualty Company.
Court composed of Chief Judge ARMSTRONG, Judge BAGNERIS, SR., and Judge BONIN.
DENNIS R. BAGNERIS, Sr., Judge.
This appeal arises from the trial court's granting of a special motion to strike pursuant to La. C.C.P. art. 971. For the reasons that follow, we find that the trial court did not err and affirm the granting of the motion to strike.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Plaintiffs, Jelinda Gibson Allen ("Mrs. Allen") and Kwan Allen ("Mr. Allen"), filed a legal malpractice action against defendants Eric Wright and the law firm of Wright, McMillan & Moore. Specifically, the petition alleges that Mr. and Mrs. Allen suffered defamation to their character when Mr. Wright closed a juvenile case in which he represented Mrs. Allen. At that time, defendants filed an answer and exceptions of no cause and no right of action as to the claims against Mr. Allen. Defendants argued that Mr. Allen was not a client of defendants and therefore, could not assert a malpractice claim against them. The trial court granted the motions of no cause and no right of action against Mr. Allen but permitted him to go forward with his claims for loss of consortium. The trial court also allowed Mr. Allen time to amend his petition to cure any deficiencies.
Thereafter, defendants filed a motion for new trial, arguing that Mr. Allen was not entitled to damages for loss of consortium. While the motion for new trial was pending, Mr. and Mrs. Allen filed a first amending and supplemental petition against defendants, alleging that Eric Wright defamed both of them during the course of his representation of Mrs. Allen. Specifically, the first amended and supplemental petition states, in pertinent part:
11.
Petitioner, Kwan Allen, contends that Attorney Eric Wright maliciously, intentionally, and knowingly closed the juvenile case, which caused defamation to both plaintiffs character. Mr. Allen has been accused, assigned culpability for a crime that was never proven by Attorney Wright. There is not a scintilla of evidence to support this allegation.
12.
Petitioner, Kwan Allen, contends that Attorney Eric Wright closed the juvenile case without the authorization of his client (Jelinda Gibson-Allen). Attorney Wright knew that Mr. Allen worked as a health care technician who worked with children. Attorney Wright knew that closing this case would cause OCS to put Mr. and Mrs. Allen's names in their nation-wide database until Bennie McCormick, Jr. and Jayla Williams makes 18 years old. Due to the malicious and intentional act of Mr. Wright, Mr. Allen can no longer work in his field of choice as a Healthcare Professional. Also, Mr. and Mrs. Allen cannot escort their children on any field trips because of the background checks required by the Archdiocese. The rule mandates that all parents with children in catholic schools undergo a background check. Thus, the Allens have removed their children from catholic school to schools where they can have more control and ability to go on field trips. Also, Mr. Allen is now attending the University of Phoenix as a Criminal Justice Major. Mr. Wright's letters to the Louisiana Bar Association has further damaged Mr. Allen's reputation in field of Criminal Justice and Law. (Letters allege that Mr. Allen was the lead suspect in a crime against a 18 month old child). Mr. Wright also repeatedly calls Mr. and Mrs. Allen liars in almost every answer to the Disciplinary Counsel.
13.
Defendant, Attorney Wright, notwithstanding the fact, Mr. Kwan Allen was never properly joined in the case as a defendant was the primary suspect of the investigation of the crime. He failed to exercise discretion and judgment when he closed the juvenile case involving his client Jelinda Gibson Allen, directly and negatively affecting Kwan Allen. Attorney Wright knew Mrs. Gibson Allen's wishes from his date of hire....
14.
Petitioner Kwan Allen was compelled to temporarily separate from his wife and family as result of the animosity, stress, and negative perception of him caused by Attorney Eric Wright's handling of the Juvenile case of Jayla Williams. (Attorney Wright's quote: "You are my client and listening to your paramour is going to cause you to lose your children.") This further defamed Mr. Allen, not only with his wife, but also with his wife's extended family.
* * *
17.
Petitioners are being continuously defamed and are incurring increasing litigation expenses as a result of Attorney Eric Wright's negligence in his performance of the Juvenile case of Jayla Williams.
The trial court granted defendants' motion for new trial on the loss of consortium damages and found "the only remaining claims Kwan Allen is permitted to maintain against defendants are the claims of intentional defamation asserted by him in his First Amended and Supplemental Petition."
Thereafter, defendants filed a special motion to strike the plaintiffs' first amended and supplemental petition, pursuant to La. C.C.P. art. 971. While the special motion to strike was pending, plaintiffs' attorney filed an opposition to the special motion to strike and a second supplemental and amending petition. In that amending petition, plaintiffs do not assert a new cause of action but merely amended the pro-se original and first amending petition to back away the defamation allegations and recast them as allegations of intentional conduct on the part of defendants. Specifically, the introductory portion of their amending petition states as follows:
Now Come, plaintiffs, Kwan Allen and Jelinda Gibson Allen, who respectfully request leave to file Plaintiffs' Second Amending and Supplemental Petition drawn in such a fashion to clarify their current allegations separately and distinctly against the defendants such that this Honorable Court and opposing Counsel may proceed in orderly fashion, while not asserting a new cause of action by virtue of this pleading.
Subsequently, defendants filed exceptions of res judicata, no cause, and no right of action. Before the exceptions could be heard, the trial court granted defendants' special motion to strike. The trial court dismissed plaintiffs' first amended and supplemental petition, with prejudice, dismissing all defamation claims alleged against defendants by Mr. and Mrs. Allen. The trial court further awarded the defendants $1,500.00 in attorneys' fees and designated the judgment as final, pursuant to La. C.C.P. art. 1915.
After the trial court granted the special motion to strike but before the exceptions filed to plaintiffs' second amended and supplemental petition could be heard, Mr. Allen voluntarily dismissed his second amending and supplemental petition for damages. Mr. Allen now appeals the trial court judgment granting defendants' motion to strike and ordering plaintiff to pay attorneys' fees.

STANDARD OF REVIEW
Appellate courts review special motions to strike with the de novo standard of review because it involves issues of law and examines whether the trial court was legally correct. Lamz v. Wells, 05-1497, p. 3 (La.App. 1 Cir. 6/9/06), 938 So.2d 792, 795.

DISCUSSION
The issue before this Court is whether the trial court properly applied La. C.C.P. art. 971 to the facts alleged in Mr. Allen's first amended and supplemental petition when it granted defendants' special motion to strike. The Louisiana legislature enacted La. C.C.P. art. 971 "to screen out meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press." Lee v. Pennington, 02-0381, p. 4 (La.App. 4 Cir. 10/16/02), 830 So.2d 1037, 1041. The Louisiana Code of Civil Procedure provides for a special motion to strike cases pursuant to La. C.C.P. art. 971, which provides, in pertinent part:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.
B. In any action subject to Paragraph A of this Article, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.
C. The special motion may be filed within sixty days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper. The motion shall be noticed for hearing not more than thirty days after service unless the docket conditions of the court require a later hearing.
D. All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this Article. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. Notwithstanding the provisions of this Paragraph, the court, on noticed motion and for good cause shown, may order that specified discovery be conducted.
E. This Article shall not apply to any enforcement action brought on behalf of the state of Louisiana by the attorney general, district attorney, or city attorney acting as a public prosecutor.
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
(a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law. (emphasis added)
(b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law. (emphasis added)
(c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
The burden of proof begins with the party filing the motion to strike to prove that "the cause of action arises from an act in the exercise of his right of free speech regarding a public issue." Aymond v. Dupree, 05-1248, p. 7 (La. App. 3 Cir. 4/12/06), 928 So.2d 721, 727. Once proven, the plaintiff must then demonstrate a probability of success on the claim. Id. In determining whether the plaintiff established a probability of success on his claims, the court will "consider the pleadings and supporting and opposing affidavits." La. C.C.P. art. 971(A)(2).
In the first amended and supplemental petition, Mr. Allen alleges that he was defamed by Mr. Wright's closing of Jelinda Gibson's case in juvenile court. Mr. Allen further claims that he was defamed by statements made by Mr. Wright in defense to a bar complaint filed against him.
The Louisiana Code of Civil Procedure states that a special motion to strike pertains to "[a]ny written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law." La. C.C.P. art. 971(F)(1)(b). Given the above facts, we find that the statements at issue in the case sub judice constitute free speech regarding a public issue. Thus, we must determine if plaintiffs demonstrated a probability of success on their claims.
It is worth reiterating at this time that defendants, Eric Wright and Wright, McMillan & Moore, never represented Mr. Allen. Thus, Mr. Allen will have to show that defendants acted intentionally to harm him. See Montalvo v. Sondes, 93-2813 (La. 5/23/94), 637 So.2d 127 (whereby the Louisiana Supreme Court held that absent an "intentional tort" being committed by an attorney against a nonclient, no liability can be found.)

Defamation
Prevailing on a claim for defamation requires the plaintiff to prove: (1) a false or defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Trentecosta v. Beck, 96-2388, p. 10 (La. 10/21/97), 703 So.2d 552, 559. If one element of defamation is lacking, the claim cannot prevail.
Mr. Allen avers in the first amended and supplemental petition that Eric Wright "maliciously, intentionally, and knowingly" closed the juvenile case he was handling for Mrs. Allen, which allegedly "caused defamation to both plaintiffs [sic] character." However, in paragraph thirteen of the first amended petition, Mr. Allen acknowledges that Eric Wright "failed to exercise discretion and judgment when he closed the juvenile case involving his client Jelinda Gibson Allen..." Thus, even if it were true that Eric Wright somehow improperly closed the case, any such act would not be found to be intentional. Further, the allegations with respect to Eric Wright's closing of the case do not satisfy the first element required to prove defamation since there are no "defamatory words" used by Eric Wright.
Mr. Allen alleges in paragraph twelve of his first amended and supplemental petition for damages that "Mr. Wright's letter to the Louisiana Bar Association has further damaged Mr. Allen's reputation..." However, as defendants correctly noted, defending oneself against allegation of misconduct certainly does not rise to the level of intentional conduct. Further, because the statements made by Eric Wright to the disciplinary counsel are confidential, Mr. Allen cannot prove that they were published, a required element of his claim.
Mr. Allen further alleges in paragraph fourteen of the first amended and supplemental petition that he was defamed with his wife and her extended family by a comment allegedly made by Eric Wright to Jelinda Gibson Allen, "You are my client and listening to your paramour is going to cause you to lose your children." However, we agree with defendants that this comment is simply Eric Wright's opinion, made in the course of an attorney representing a client, and is not subject to determination of its truth or falsity. Thus, Mr. Allen cannot prove defamation with respect to the above complained about opinion.
For the above-mentioned reasons, we find that the trial court did not err in granting the motion to strike as the record lacks evidence to sustain Mr. Allen's burdens of proof regarding intentional defamation. Accordingly, we hereby affirm the judgment of the trial court that granted defendants' special motion to strike and dismissed, with prejudice, plaintiffs' first amended and supplemental petition for damages.
AFFIRMED.